RENDERED: SEPTEMBER 28, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0423-WC

FRANCISCO RODARTE                                     APPELLANT

|  | ON APPEAL FROM COURT OF APPEALS |
|---|---|
| V. | NO. 2022-CA-0239 |
|  | WORKERS' COMPENSATION BOARD |
|  | NO. WC-18-64352 |

BLUELINX CORPORATION;                               APPELLEES
HONORABLE JOHNATHAN R.
WEATHERBY, ADMINISTRATIVE LAW
JUDGE; AND WORKERS' COMPENSATION
BOARD

AND

2022-SC-0428-WC

FRANCISCO RODARTE                                     APPELLANT

|  | ON APPEAL FROM COURT OF APPEALS |
|---|---|
| V. | NO. 2021-CA-1473 |
|  | WORKERS' COMPENSATION BOARD |
|  | NO. WC-16-98428 |

BLUELINX CORPORATION;                               APPELLEES
HONORABLE DOUGLAS WAYNE GOTT,
ADMINSTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE LAMBERT**

**<u>AFFIRMING</u>**

Francisco Rodarte (Rodarte) appeals a ruling of the Court of Appeals that addressed two separate appeals from the Workers' Compensation Board (the Board). Rodarte sustained two work-related injuries while working for BlueLinx Corporation (BlueLinx): a knee and ankle injury in 2016 and a shoulder injury in 2018. In 2019, Rodarte filed an application for resolution of a claim (Form 101) for his knee and ankle injuries. At that time, Rodarte was receiving total temporary disability (TTD) and medical benefits for his shoulder and had not yet filed a Form 101 for that injury. Rodarte and BlueLinx ultimately entered into a Form 110 agreement as to compensation (settlement agreement) for Rodarte's knee and ankle injuries. The settlement agreement did not include language regarding Rodarte's 2018 shoulder injury.

Eleven months after the settlement agreement was entered, Rodarte reached maximum medical improvement (MMI) for his shoulder injury and stopped receiving benefits. He filed a Form 101 for his shoulder injury three months later. BlueLinx denied his shoulder claim, arguing that it was barred pursuant to KRS[1] 342.270 due to his failure to join it to the 2016 claim. Rodarte then filed a motion to reopen the 2016 claim based on a mutual mistake of fact, asserting that both parties had intended to join the shoulder injury to the settlement agreement. Chief Administrative Law Judge Douglas Gott (CALJ Gott) denied the motion to reopen. Thereafter, ALJ Johnathan Weatherby (ALJ Weatherby) dismissed Rodarte's shoulder claim, finding that

[1] Kentucky Revised Statute.

2

his failure to join his shoulder claim to the 2016 claim rendered his shoulder claim waived under KRS 342.270. Rodarte appealed the respective rulings.

In separate opinions, the Board affirmed CALJ Gott's denial of Rodarte's motion to reopen and reversed ALJ Weatherby's ruling that his shoulder claim was barred due to failure to join. Rodarte and BlueLinx each filed appeals. The Court of Appeals consolidated the appeals, and a split panel affirmed the Board in part and reversed it in part. The Court of Appeals affirmed the Board's ruling on the motion to reopen but reversed its determination that Rodarte's shoulder claim was not barred for failure to join and reinstated ALJ Weatherby's order denying the 2018 claim. After review, we affirm the Court of Appeals in full.

## I.   FACTS AND PROCEDURAL BACKGROUND

Rodarte is a fifty-five-year-old male with an eleventh-grade education. He began working for BlueLinx as a truck driver in 2015. On January 5, 2016, Rodarte fell from a flatbed truck while trying to tighten a ratchet strap, tearing the meniscus in his right knee and spraining his left ankle. His meniscus was surgically repaired on July 19, 2016. After he recovered from knee surgery, he returned to work at BlueLinx on March 25, 2017. Over a year later, on August 13, 2018, Rodarte sustained a superior labrum anterior-posterior (SLAP) tear in his right shoulder while tightening a ratchet strap. He began receiving TTD and medical benefits for his shoulder injury the next day. Three months later in November 2018, Rodarte underwent his first shoulder surgery to repair the SLAP tear.

3

On March 11, 2019, Rodarte filed a Form 101 for his knee and ankle injuries under claim number 2016-98428 (2016 claim). On October 7, 2019, Rodarte and BlueLinx entered into a settlement agreement for his 2016 claim. The settlement agreement was approved by ALJ Roland Case on the same date. Rodarte did not file a motion to join his shoulder injury to his 2016 claim, and the settlement agreement accordingly did not include language excluding his 2018 shoulder injury. A month after the settlement agreement was entered, Rodarte underwent a second shoulder surgery; he was still reporting pain and decreased strength following the first surgery and a physician had opined that revision surgery was needed.[2] When the settlement agreement for the 2016 claim was entered Rodarte was still receiving TTD benefits and medical benefits for his shoulder injury, which BlueLinx continued to pay until September 14, 2020, when he reached MMI.

Thereafter, on December 4, 2020, Rodarte filed a Form 101 for his shoulder injury under claim number 2018-64352 (2018 claim). In January 2021, BlueLinx filed a Form 111 notice of claim denial. BlueLinx denied the claim based, in part, on its contention that the 2018 claim was waived in accordance with KRS 342.270(1) due to Rodarte's failure to join it to the 2016 claim. That statute provides in relevant part:

> If the parties fail to reach an agreement in regard to compensation under this chapter, either party may make written application for
>
> resolution of claim. . . . When the application is filed by the employee or during the pendency of that claim, he or she shall join

---

[2] BlueLinx paid for both of Rodarte's shoulder surgeries.

4

all causes of action against the named employer which have accrued and which are known, or should reasonably be known, to him or her. Failure to join all accrued causes of action will result in such claims being barred under this chapter as waived by the employee.[3]

Rodarte then attempted to alter the settlement agreement by filing a motion to reopen the 2016 claim under KRS 342.125, which states that

> (1) Upon motion by any party or upon an administrative law judge's own motion, an administrative law judge may reopen and review any award or order on any of the following grounds:
>
> (a) Fraud;
>
> (b) Newly-discovered evidence which could not have been discovered with the exercise of due diligence;
>
> (c) Mistake; and
>
> (d) Change of disability as shown by objective medical evidence of worsening or improvement of impairment due to a condition caused by the injury since the date of the award or order.

Rodarte argued that the 2016 claim should be reopened due to a "mistake": he asserted that both parties intended to include language in the settlement agreement that excluded his shoulder injury, and that their failure to do so was a "clerical error." Rodarte also filed a motion to amend the settlement agreement and correct the omission *nunc pro tunc* as well as a motion to void the settlement agreement for mutual mistake of fact. Rodarte's motion to reopen was assigned to CALJ Gott under the original 2016 claim number,

---

[3] KRS 342.270(1).

2016-98428, while his 2018 claim and BlueLinx's corresponding joinder defense was addressed by ALJ Weatherby under claim number 2018-64352.

On July 1, 2021, CALJ Gott entered an order denying Rodarte's motion to re-open the 2016 claim. He reasoned:

> Rodarte wants the CALJ to issue an order to retroactively say that the settlement of the 2016 claim in 2019 had no effect on the separate 2018 injury claim pending between the same parties.
>
> The CALJ finds no basis for this argument. Rodarte says, "It is clear there was no intent by either party to settle the 2018 claim" in the settlement of the 2016 injury. But that's not the point. BlueLinx's defense in the 2018 claim is that Rodarte failed to join that claim to the 2016 claim before the Form 110 was approved, and therefore the 2018 claim is barred. It is up to the ALJ in the 2018 claim to decide whether the joinder defense applies. Rodarte cites no authority to allow this CALJ to reopen a claim to add language to a settlement agreement in order to protect the viability of a separate claim.
>
> Rodarte's alternative motion to amend the prior Form 110 is denied for these same reasons. [. . .]
>
> Rodarte's subsequent pleading grounding his motion to reopen in mutual mistake is also without merit. . . . Interestingly, Rodarte does not claim any mistake on his part, but says "[BlueLinx] was clearly mistaken" in not preserving his 2018 shoulder claim in the 2019 settlement agreement. [BlueLinx] concedes no such thing, so there cannot be a mutual mistake. The fact that [BlueLinx] continued to pay benefits under the 2018 shoulder claim is immaterial. Further, [BlueLinx] had to weigh the consequences of terminating benefits if the joinder defense is unsuccessful.
>
> [. . .]
>
> Finally, as BlueLinx notes, Rodarte does not seek reopening of the 2016 claim to modify the benefits he received from that settlement; he only seeks to change the effect of the closed 2016 claim on the pending 2018 claim. That is not a basis for reopening under KRS 342.125.

Rodarte thereafter filed a petition for reconsideration (PFR), which was denied. In denying the PFR, CALJ Gott again emphasized a lack of mutual mistake as well as a lack of an obligation on BlueLinx's part to ensure Rodarte's shoulder claim was preserved. The CALJ also noted that it was Rodarte's decision to settle his knee and ankle claims before his shoulder claim was ready for negotiations, and that in the absence of an express agreement by both parties to preserve the 2018 claim, the CALJ lacked the ability to re-open the 2016 claim.

The following month, ALJ Weatherby dismissed Rodarte's 2018 claim. The ALJ made the following conclusions in support of his ruling:

> 11. The undisputed facts in this matter indicate [Rodarte] suffered an onset of pain while working for [BlueLinx] on August 13, 2018, reported an injury, and received [TTD] benefits as a result thereof.
>
> 12. It is also undisputed that [Rodarte] settled a prior claim against the same employer on October 7, 2019, for an injury that occurred in 2016.
>
> 13. The Kentucky Supreme Court, in *Ridge v. VWV Enterprises, Inc.*, 114 S.W.3d 845 (Ky. 2003), said the language of KRS 342.270(1) is clear and unequivocal, and mandatory. *Ridge* involved almost identical facts including two sequential but different injuries suffered in the employ of the same defendant. The court reasoned that once a claim was made for the first injury, KRS 342.270(1) required him to join the claim for the second injury prior to settling the first.
>
> 14. [Rodarte] has argued that the failure to join the instant claim was due to a mistake or in the alternative that the language barrier prevented his understanding of the joinder requirement.
>
> 15. [Rodarte] however testified he understood the origin of the [TTD] and medical benefits he received due to the 2018 injury. [. . .]

7

16. The ALJ therefore finds [Rodarte] failed to join this cause of action as required by KRS 342.270(1), that the claim had accrued, and that he knew or should have reasonably known of the requirement due to his representation by competent, English-speaking, legal counsel.[4]

Rodarte filed separate appeals with the Board regarding each adverse ruling. On November 19, 2021, the Board addressed Rodarte's appeal from CALJ Gott's denial of his motion to reopen. Rodarte again argued that the 2016 claim should have been reopened based on mutual mistake of fact: he asserted that he was mistaken in not including language joining the 2018 claim to the settlement agreement, and that BlueLinx was mistaken because it continued to pay TTD and medical benefits for his shoulder injury for eleven months after the settlement agreement was approved.

A unanimous Board panel rejected Rodarte's arguments and affirmed the CALJ. The Board reasoned that Rodarte did not identify any "mistake regarding the settlement agreement as it applies to the 2016 injury claim[,]" and that the only mistake alleged concerned solely the 2018 claim. Moreover, Rodarte had presented no evidence whatsoever indicating that the parties intended the settlement agreement to contain language preserving his shoulder injury. The Board further discussed that the "payment of benefits in the 2018 claim after the settlement [had] no bearing on the 2016 claim." Finally, it noted that "the facts in the case *sub judice* are indistinguishable from *Ridge*," and that the CALJ properly determined that Rodarte's motion to reopen was an

---

[4] BlueLinx filed a PFR from this ruling that is not material to this appeal that was granted. Rodarte did not file a PFR.

improper attempt to use the 2016 injury claim to cure a perceived failure regarding the 2018 claim.

However, a few months later in February 2022, the Board unanimously reversed ALJ Weatherby's dismissal of Rodarte's 2018 claim. The Board held that KRS 342.270(1)'s compulsory joinder requirement was not applicable because Rodarte's shoulder claim had not yet accrued when the settlement agreement was entered. It reasoned:

> In the case *sub judice*, there is no dispute that after the 2018 injury, Rodarte immediately began drawing TTD benefits and shortly thereafter underwent surgery on November 27, 2018. The undated Form 110 in the 2016 claim was approved by ALJ Case by order dated October 7, 2019. At that time, Rodarte had not filed a claim for the 2018 injury presumably because he was receiving TTD benefits and was still recovering from the November 2018 surgery. The parties' stipulation establishes that at the time the Form 110 was approved in [the 2016 claim], Rodarte was still drawing TTD benefits. Further, he underwent another surgery one month after the settlement agreement in the 2016 claim was approved. Thus, at the time the settlement agreement was approved, Rodarte could not possibly ascertain the extent to which the first surgery remedied his shoulder problem, whether he would be impaired as a result of the injury, i.e., the nature and extent of his injury, and whether the injury merited an impairment rating. Significantly, he underwent a second surgery which BlueLinx's evaluating physician, Dr. Walkiewicz, agreed was reasonable and necessary. . . . Dr. Walkiewicz opined that Rodarte would be at MMI one year after [that] surgery. Assuming his opinion also applied to the [first shoulder surgery], Rodarte at the time ALJ Case approved the settlement of the 2016 claim would not have been at MMI following the first shoulder surgery. Rather, he would have attained MMI on November 27, 2019.
>
> Rodarte's TTD benefits were terminated by BlueLinx on September 4, 2020, over eleven months after the parties settled [the 2016 claim]. Based on a November 2, 2020, examination, Dr. Kay was the first doctor to offer an opinion concerning the existence of an impairment rating assessing a 24% impairment rating as a result of the 2018 injury. . . . In light of the above, we hold that at the

time [the 2016 claim] settled, Rodarte's claim had not accrued for purposes of KRS 342.270(1).  At the time of the settlement,

assuming Dr. Walkiewicz would have assessed MMI one year after the first [shoulder] surgery, Rodarte would have attained MMI at least one month beyond the date ALJ Case approved the settlement on October 7, 2019.  Significantly, when ALJ Case approved the [the settlement agreement in the 2016 claim] Rodarte was drawing TTD benefits.  The BRC[5] Order reflects Bluelinx did not dispute Rodarte's entitlement to TTD benefits between August 14, 2018, and September 14, 2020.  Thus, Rodarte had met the statutory definition of temporary total disability and was entitled to TTD benefits during this period.  Just as important, as of October 7, 2019, none of the physicians could offer an opinion regarding the nature and extent of the injury and whether the 2018 injury generated an impairment rating pursuant to the AMA *Guides*, as the AMA *Guides* are clear an impairment rating cannot be assessed prior to attainment of MMI.

The first impairment rating offered in the case *sub judice* was generated by Dr. Kay, who based on a November 2, 2020, examination assessed a 24% impairment rating.  Consequently, at the earliest, Rodarte was aware he sustained a permanent injury at the time of Dr. Kay's report.  [Most] importantly, at the time the 2016 claim settled, the statute of limitations had not begun to run on Rodarte's claim as the limitation period began to run after September 14, 2020, when payment of TTD benefits ceased.  Thus, his claim had not accrued at the time the settlement agreement in the 2016 claim was approved and KRS 342.270(1) is inapplicable.

BlueLinx would have us hold that in order for Rodarte's August 2018 claim to be viable, he was required to file a claim for the 2018 injury even though he was recovering from surgery, probably not at MMI, and could not be appraised of the nature and extent of his right shoulder injury.  Further, in all likelihood, upon filing the claim for the 2018 injury, Rodarte's TTD benefits would have been terminated.  According to BlueLinx, even though there was uncertainty as to the extent the first surgery was beneficial and whether Rodarte's 2018 right shoulder injury merited an impairment rating, he was required to file a claim for the 2018 injury.  As claimed by BlueLinx, Rodarte was required to file a claim for the 2018 eleven months before the statute of limitations began to run on the claim.  We reject that premise.

---

[5] Benefit review conference.

The Board held that *Ridge* was distinguishable because this Court specifically noted that there was no indication that TTD benefits were paid for Ridge's second injury at the time Ridge filed a claim for his first injury. In *Ridge* this Court noted that

> [a]lthough TTD benefits continued to be paid for the [second] injury at that point, the parties stipulated that they ceased shortly thereafter on December 26, 1999. The [first] injury claim was not filed until April 19, 2000. Contrary to the claimant's assertion, there is no indication in the record that any TTD benefits for the [second] injury were paid after the [first] injury claim was filed.[6]

Based on the foregoing language, the Board concluded that this Court's holding in *Ridge* would have been different "had Ridge been receiving TTD benefits for the [second] injury at the time the parties settled the [first] injury claim." For reasons discussed below, the Board also found *Saint Joseph Hospital v. Frye*,[7] a published case, as well as *Pepsi Cola General Bottlers, Inc. v. Butler*,[8] and *Martin County Fiscal Court v. Simpkins*,[9] two unpublished cases, to be persuasive.

BlueLinx appealed the Board's ruling on the compulsory joinder issue, while Rodarte appealed its ruling on his motion to reopen. The Court of Appeals consolidated the cases and addressed both issues in *Rodarte v.*

---

[6] 114 S.W.3d at 847.

[7] 415 S.W.3d 631 (Ky. 2013).

[8] 2006-CA-002401-WC, 2007 WL 1964526 (Ky. App. July 6, 2007), *aff'd sub nom. Pepsi Cola v. Butler*, 2007-SC-000514-WC, 2008 WL 1850581 (Ky. Apr. 24, 2008).

[9] 2014-CA-001863-WC, 2015 WL 4880356 (Ky. App. July 24, 2015).

11

*BlueLinx Corporation.*[10]  The court affirmed the Board and the CALJ in their rulings on the motion to reopen and agreed that Rodarte had presented no evidence of mutual mistake of fact, and that he could not use the 2016 claim to cure his failure to join the 2018 claim.[11]

However, the court reversed the Board as to the joinder issue, thereby reinstating the ALJ's motion to dismiss the 2018 claim.[12]  The court held that under its unpublished opinion of *Wireman v. Bizzack, Inc.,*[13]  Rodarte's 2018 claim had accrued "on the day he was injured and first saw a doctor for his injury."[14]  The court further concluded that "[t]he Board's determination that MMI must be reached for a claim to accrue is not based on any precedent[,]" and that the Board conflated the issues of claim accrual and the statute of limitations.[15]  It explained that, because Rodarte's claim for his shoulder injury accrued on the day that he was injured, the statute of limitations on his claim began running on that date.[16]  And, the fact that BlueLinx paid TTD benefits on the 2018 claim tolled the statute of limitations but did not change the date of accrual.[17]

---

[10] 2021-CA-1473-WC, 2022 WL 3721729 (Ky. App. Aug. 26, 2022).

[11] *Id.* at *6.

[12] *Id.* at *8.

[13] 2011-CA-001948-WC, 2012 WL 2483451 (Ky. App. June 29, 2012).

[14] *Rodarte*, 2022 WL 3721729 at *7.

[15] *Id.*

[16] *Id.* at *8.

[17] *Id.*

Judge Maze dissented and agreed with the Board that Rodarte's 2018 claim had not yet accrued when he settled the 2016 claim.[18] He asserted that three decisions relied upon by the Board that were rendered subsequent to *Ridge*—*Frye, Butler,* and *Simpkins*—called the result in *Ridge* into question and "made it clear that joinder is not required simply because a subsequent injury occurs while a prior injury claim is pending[.]"[19]

Rodarte now appeals the Court of Appeals' rulings on his motion to reopen and the dismissal of his 2018 claim to this Court. Additional facts are discussed below as necessary.

## II.  ANALYSIS

Our well-established standard of review in workers' compensation cases is to "correct the Board only where [this] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause a gross injustice."[20] However, when an issue solely concerns statutory interpretation, i.e., a question of law, our review is *de novo* and we provide no deference to the rulings made below.[21]

---

[18] *Id.*

[19] *Id.*

[20] *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

[21] *Saint Joseph Hosp. v. Frye*, 415 S.W.3d 631, 632 (Ky. 2013) (citing *Ky. Emps. Mut. Ins. v. Coleman*, 236 S.W.3d 9, 13 (Ky. 2007)).

13

**A. Rodarte's motion to reopen was properly denied.**

As noted, KRS 342.125 provides that "an administrative law judge may reopen and review any award or order" on the grounds of fraud, newly discovered evidence, mistake, or change of disability.[22] "Upon reopening, the administrative law judge may end, diminish, or increase compensation previously awarded, within the maximum and minimum provided in [KRS Chapter 342], or change or revoke a previous order."[23] In order to prevail on a motion to reopen, a claimant is "required to make a reasonable prima facie preliminary showing of the existence of a substantial possibility of the presence of one or more of the prescribed conditions that warrant a change in [the ALJ's decision] before his adversary is put to the additional expense of relitigation."[24]

Rodarte has never argued that his 2016 claim should be reopened to affect a material change to his 2016 settlement agreement. Rather, he sought only to add language to the settlement agreement stating that his 2018 shoulder claim would not be waived by its entry. We agree with the reasoning of both the CALJ and the Board that KRS 342.125 provides no authority for an ALJ to reopen a closed claim to add language in order to protect the viability of a separate claim.

Moreover, Rodarte continues to argue that his motion to reopen should have been granted on the basis of mutual mistake of fact. He contends that he

---

[22] KRS 342.125(1).

[23] KRS 342.125(4).

[24] *Stambaugh v. Cedar Creek Mining Co.*, 488 S.W.2d 681, 682 (Ky. 1972).

and BlueLinx were mutually mistaken on a material fact regarding the 2016 settlement agreement. Rodarte asserts that he was mistaken in not including language joining his 2018 claim to the settlement agreement, while BlueLinx was mistaken after the settlement agreement was entered because it continued to pay TTD and medical benefits for the 2018 claim. This does not constitute mutual mistake of fact.

> To reform a written contract upon the equitable grounds of mutual mistake, the proponent of the reformation must satisfy these three elements: "First, it must show that the mistake was mutual, not unilateral. Second, [t]he mutual mistake must be proven beyond a reasonable controversy by clear and convincing evidence. Third, it must be shown that the parties had actually agreed upon terms different from those expressed in the written instrument."[25]

Rodarte's argument fails each of these requirements. BlueLinx has never conceded that both it and Rodarte intended to include his 2018 shoulder injury in the 2016 settlement agreement, and Rodarte has never presented any evidence, let alone clear and convincing evidence, of that alleged mutual intent. We therefore agree that Rodarte failed to make a prima facie case for reopening his 2016 claim and affirm.

## B. Rodarte's 2018 claim accrued prior to the entry of the settlement agreement for the 2016 claim. His 2018 claim is therefore barred by KRS 342.270.

Rodarte next argues that ALJ Weatherby and the Court of Appeals erred by ruling that his 2018 claim was waived under KRS 342.270 due to his failure to join that claim to his 2016 claim prior to the entry of the settlement

---

[25] *Nichols v. Zurich Am. Ins. Co.*, 423 S.W.3d 698, 702–03 (Ky. 2014) (quoting *Abney v. Nationwide Mut. Ins. Co.*, 215 S.W.3d 699, 704 (Ky. 2006)).

15

agreement. He argues in line with the reasoning of both the Board and the dissenting opinion from the Court of Appeals decision below. In particular, he asserts that although *Ridge* appears to be controlling, its facts are sufficiently distinguishable. And, he argues, the subsequent opinions of *Frye*, *Butler*, and *Simpkins* have called the holding in *Ridge* into question. For the reasons that follow, we disagree.

We begin with the joinder statute at issue, KRS 342.270(1). The statute became effective in 1996 and was enacted by the General Assembly to address concerns raised by this Court in *Jeep Trucking, Inc. v. Howard*[26] regarding problems that often arose due to the piecemeal litigation of workers' compensation claims. KRS 342.270(1) directs in its entirety:

> If the parties fail to reach an agreement in regard to compensation under this chapter, either party may make written application for resolution of claim. The application must be filed within two (2) years after the accident, or, in case of death, within two (2) years after the death, or within two (2) years after the cessation of voluntary payments, if any have been made. When the application is filed by the employee or during the pendency of that claim, he or she **shall join all causes of action against the named employer which have accrued and which are known**, or should reasonably be known, to him or her. **Failure to join all accrued causes of action will result in such claims being barred under this chapter as waived** by the employee.[27]

Accordingly, a workers' compensation claimant is required to join all causes of action against an employer "which have accrued and which are known, or

---

[26] 891 S.W.2d 78 (Ky. 1995).

[27] (Emphasis added).

16

should reasonably be known[.]"[28]  And, if a claimant fails to join an accrued cause of action, that cause of action will be considered waived and therefore barred.  The sole issue before this Court, then, is whether Rodarte's shoulder injury claim accrued before the settlement agreement on his 2016 claim was entered.  We begin with discussion of the case law cited by the parties.

*Ridge* is considered the seminal case to interpret and apply KRS 342.270(1).  But, although the facts of *Ridge* are similar to the ones at bar, the issues addressed are quite different.  The claimant in *Ridge* sustained two distinct work-related injuries while working for the same employer: a knee injury in July 1998 and a back injury in April 1999.[29]  In November 1999, the employer's insurance carrier sent a letter to the claimant's attorney proposing that the parties settle the 1998 knee injury "and concentrate on the [1999] back claim."[30]  The employer paid TTD benefits for the back injury, but those payments ceased in December 1999, a month after the carrier's letter was sent.[31]  Four months later in April 2000, the claimant filed a Form 101 for his knee injury.[32]  The parties reached a settlement agreement for the knee injury in August 2000, but the agreement contained no mention of his back claim.[33]

---

[28] *Id.*

[29] 114 S.W.3d at 846.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

The claimant did not file a Form 101 for his back injury until February 2001, which the employer denied citing a lack of joinder under KRS 342.270(1).[34]

Following a hearing, the ALJ dismissed the back claim, noting that "although the claimant was clearly aware of his back injury when settling the knee injury claim, he did not seek to join the claims," and that the burden was on the claimant to comply with KRS 342.270(1) "between the date of the back injury and the date upon which the knee injury claim was settled[.]"[35] In his PFR, the claimant asserted that KRS 342.270 only required joinder of claims arising out of the same incident.[36] In addition, he argued that the ALJ erred by not addressing his argument that the employer was estopped from invoking KRS 342.270 because it agreed to bifurcation via its carrier's letter.[37] The PFR was denied, the claimant appealed, and the Board and Court of Appeals affirmed.[38]

Before this Court, the claimant argued: (1) that he sustained different injuries on different dates, and KRS 342.270 applied separately to each incident; and (2) that the employer was estopped from invoking the joinder statute because it had agreed to bifurcating the claims via its carrier's letter, and that the ALJ erred by failing to consider his estoppel argument.[39] The

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

18

*Ridge* Court dismissed the claimant's first argument in short order by holding that

> [t]he language of KRS 342.270(1) is clear, unequivocal, and mandatory, both with respect to a worker's obligation to join "all causes of action" against the employer during the pendency of a claim and with respect to the penalty for failing to do so. Under KRS 342.270(1), it is immaterial that the claimant's knee and back injuries arose at different times, involved separate claims, and were treated by the parties as separate matters. Once he filed a claim for the knee injury, KRS 342.270(1) required him to file and join the claim for the back injury before the knee injury claim was settled.[40]

The Court likewise rejected the claimant's estoppel argument. It held:

> We are not persuaded that by sending a letter to encourage settlement of the knee injury claim so that the parties could concentrate on the back injury or that by paying separate TTD benefits for the two injuries, the employer or its carrier engaged in conduct that warranted an estoppel. The injuries occurred at different times and affected different parts of the claimant's body. At the time that the letter was sent, no claim had been filed for either injury. Although TTD benefits continued to be paid for the back injury at that point, the parties stipulated that they ceased shortly thereafter on December 26, 1999. The knee injury claim was not filed until April 19, 2000. Contrary to the claimant's assertion, there is no indication in the record that any TTD benefits for the back injury were paid after the knee injury claim was filed.[41]

So, the primary issue the *Ridge* Court addressed was whether KRS 342.270(1) applies separately to each work-related injury a claimant might sustain. Because of that, although the *Ridge* claimant's back injury had impliedly accrued prior to the settlement agreement because joinder was mandated, nowhere in the opinion does the Court directly address when, how,

---

[40] *Id.* at 847.

[41] *Id.*

19

or why his back claim accrued. And, although the *Ridge* Court specifically noted that TTD payments for the back injury ceased prior to the settlement agreement, it did so in response to an estoppel argument, not an accrual argument. We therefore must respectfully disagree with the Board's conclusion that the outcome in *Ridge* would have been different had the claimant been receiving TTD benefits for the second injury at the time the parties settled the first injury claim.

*Frye, Butler*, and *Simpkins* are similarly not dispositive of the issue now before us nor do they call any aspect of *Ridge* into question.

*Frye* presented an atypical set of procedural circumstances wherein the claimant's second work-related injury did not occur until after the final hearing before the ALJ for her first work-related injury.[42] When this Court addressed whether joinder of the claims was required, it explicitly declined to address the claimant's argument that her cause of action for the second injury had not yet accrued.[43] Instead, the Court held that joinder was not mandated under KRS 342.270(1) because her "first injury claim was not pending between the date of the hearing and the date the ALJ rendered his opinion regarding that claim."[44] *Frye* is therefore of little use here, as it did not address accrual and is factually

---

[42] 415 S.W.3d at 631-32.

[43] *Id*. at 632.

[44] *Id*. at 635. *See* KRS 342.270(1) ("When the application is filed by the employee **or during the pendency of that claim**, he or she shall join all causes of action against the named employer . . . .") (emphasis added).

20

distinct: Rodarte's second injury occurred several months before he filed a Form 101 for his first injuries.

The next two opinions, *Butler* and *Simpkins*, are both un-published. "'Not To Be Published' opinions of the Supreme Court and the Court of Appeals are not binding precedent[.]'"[45] Nevertheless, even assuming *arguendo* that those opinions have precedential value, they would not be dispositive.

*Butler* addressed when a claimant's cause of action for a psychological injury accrued.[46] In February 2000, the claimant sustained a work injury to his coccyx.[47] He thereafter filed a Form 101 for that injury and settled the claim with his employer in October 2001.[48] Neither the Form 101 nor the settlement agreement contained any language concerning a psychological injury.[49] During his deposition prior to the settlement, the claimant testified that he took "nerve pills" for depression and that he was experiencing anxiety and depression as a result of no longer being able to provide for his family.[50] The claimant returned to work from his injury in January 2001 and continued

---

[45] Kentucky Rule of Appellate Procedure (RAP) 41(A).

[46] *Butler*, 2007 WL 1964526 at *6. We note here that this Court subsequently affirmed the Court of Appeals' ruling in *Butler* in an unpublished opinion, *Pepsi Cola v. Butler*, 2007-SC-000514-WC, 2008 WL 1850581 (Ky. Apr. 24, 2008), and agreed with the Court of Appeals' reasoning. The Board and Rodarte have only cited to the Court of Appeals opinion; it is therefore the one we address.

[47] *Butler*, 2007 WL 1964526 at *1.

[48] *Id.*

[49] *Id.*

[50] *Id.* at *2.

to work until July 2004 when he had to stop due to increased back pain and fatigue.[51]

In March 2005 the claimant filed a motion to reopen alleging that his physical condition had worsened and that he had developed depression due to his severe, chronic pain.[52] In support of his psychological injury claim, he submitted physician reports diagnosing him with depression caused, at least in part, by loss of function from his work-related injury.[53] The ALJ granted the motion to reopen, rejected the employer's argument that the psychological injury claim was barred by KRS 342.270(1), and awarded the claimant benefits for his psychological injury.[54]

On appeal, the employer argued that the cause of action for the psychological injury claim had accrued when the claimant first experienced depression and anxiety and sought treatment for those symptoms, which occurred prior to the settlement agreement.[55] The claimant responded, and the Court of Appeals agreed, that his "cause of action . . . did not accrue until that claim had all the elements present to be a compensable claim," which did not occur until after the settlement agreement was entered.[56]

---

[51] *Id.*

[52] *Id.* at *1.

[53] *Id.* at *3.

[54] *Id.* at *5.

[55] *Id.* at *6.

[56] *Id.* (internal quotation marks omitted).

The Court of Appeals began by noting that KRS 342.270(1) mandates a claimant to bring all claims "which are known, or should reasonably be known to him."[57]  Based on this, it held that "a cause of action for a psychological injury accrues when a claimant becomes aware that he has suffered a psychological injury."[58]  Next, it determined "when a psychological injury occurs" based on the definition of injury provided in KRS 342.0011:

> any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical
>
> findings. . . . but shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury.[59]

Reading this definition in conjunction with the joinder statute, the court held that a "cause of action for a psychological injury accrues when a claimant has suffered a 'harmful change in [his] human organism evidenced by objective medical findings' and he knows or should know that such harmful change is a 'direct result of a physical injury.'"[60]  The court noted that there was no evidence of record that the claimant treated with a psychologist or psychiatrist or underwent any psychological testing prior to the settlement agreement, nor was there evidence that a physician had assigned him an impairment rating for

---

[57] *Id.*

[58] *Id.*

[59] *Id.* at *7.

[60] *Id.*

23

his complaints of anxiety or depression until after the reopening.[61]  Citing *Gibbs v. Premier Scale Company/Indiana Scale Co.*,[62] the court held that the claimant's psychological injury claim did not accrue until "his symptoms were diagnosed by a physician and there were objective medical findings to support that diagnosis."[63]  It accordingly affirmed the ALJ's finding that the claim was timely filed.[64]

In *Simpkins*, the claimant sustained skin damage caused by an exposure to chemicals in July 2010.[65]  He later filed a Form 101 for the injury and entered into a settlement agreement regarding the claim.[66]  On October 10, 2011, the ALJ entered a hearing order noting that the parties had settled the claim, and the settlement was formally approved on October 27.[67]  Earlier that month, on October 4, Simpkins injured his back and reported the injury to his employer.[68]  However, "the record [demonstrated] that it was unclear on October 5, 2011, whether Simpkins' complaints stemmed from a new work-related injury or from aggravation of preexisting and possibly non-work-related

---

[61] *Id.* at *7.

[62] 50 S.W.3d 754 (Ky. 2001) (holding that a diagnosis must be supported by "objective medical findings," i.e., direct observation and testing applying objective or standardized methods, in order to establish the presence of a compensable injury).

[63] *Butler*, 2007 WL 1964526 at *7.

[64] *Id.* at *8.

[65] 2015 WL 4880356 at *1.

[66] *Id.*

[67] *Id.*

[68] *Id.*

back pain."[69] The claimant filed a Form 101 for his back injury in January 2013, which his employer moved to dismiss based on his failure to join his back injury to his 2010 skin damage claim.[70] The ALJ concluded that KRS 342.270 did not bar his claim because the claimant's back injury did not accrue until after the skin damage claim was settled, and the Board affirmed.[71]

The sole issue before the Court of Appeals was whether the joinder statute required the claimant to join his back injury claim to his skin injury claim prior to the entry of the settlement agreement.[72] The court noted that both the ALJ and the claimant had relied heavily on *Butler*, which in turn relied on the definition of "injury" under KRS 342.0011(1) "in holding that the claimant's cause of action for psychological injury did not accrue until the claimant [had] suffered a harmful change in his human organism evidence by objective medical findings and he knows or should know that such harmful change is a direct result of a physical injury."[73]

The Court of Appeals reaffirmed its holding in *Butler* and saw no reason it was inapplicable to the claimant in *Simpkins*.[74] Citing *Butler* and KRS 342.0011, the Court of Appeals reasoned that the existence of an injury is only

---

[69] *Id.* at *1-2.

[70] *Id.* at *1.

[71] *Id.*

[72] *Id.*

[73] *Id.* at *2 (internal quotation marks omitted).

[74] *Id.*

one element of determining when a workers' compensation claim "accrues."[75]

In addition, the claimant must also be aware that the injury is work-related.[76]

It held that the claimant was not aware that his back injury was work related

until January 3, 2013, when a physician concluded that his back injury "was a

job injury resulting in a low back injury[.]"[77]  The court went on to reason that

> in the five days between the [back] injury and settlement of the 2010 claim, "[i]t was extremely difficult to determine whether Simpkins had a meritorious claim for a work-related injury[.]" Indeed, on October 10, 2011, when the 2010 claim was settled, the appropriate process for making such a determination had only just begun.  To read KRS 342.207(1) as requiring Simpkins to immediately continue the settlement of the 2010 claim and seek joinder of an unconfirmed work-related claim is unreasonable, unduly burdensome, and beyond the intended function of KRS 342.270(1).[78]

Accordingly, the court held that the claimant's back injury claim was not

barred by KRS 342.270(1).[79]

In comparison to *Butler* and *Simpkins*, in the case now before us there

has never been any dispute that on August 13, 2018, Rodarte sustained a

"work-related traumatic event" that was "the proximate cause producing a

harmful change in the human organism evidenced by objective medical

findings."  The parties stipulated that Rodarte's shoulder injury was work-

related, and there can be no doubt that objective medical findings supported

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.* at *3.

[79] *Id.*

the diagnosis of that injury: an MRI revealed a SLAP tear in Rodarte's shoulder which led to his first shoulder surgery on November 27, 2018. And, again, both the MRI and the shoulder surgery occurred before the Form 101 for his knee and ankle injuries was filed in March 2019. Consequently, even if *Butler* and *Simpkins* held sway, they are simply inapplicable here.

Rather, to determine the date on which Rodarte's shoulder injury claim accrued, we now turn to KRS 342.185, the workers' compensation statute of limitations. The statute directs:

> [N]o proceeding under this chapter for compensation for an injury . . . shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable after the happening thereof and unless an application for adjustment of claim for compensation with respect to the injury shall have been made with the department **within two (2) years after the date of the accident**[.] . . . **If payments of income benefits have been made, the filing of an application for adjustment of claim with the department within the period shall not be required, but shall become requisite within two (2) years following the suspension of payments or within two (2) years of the date of the accident, whichever is later**.[80]

KRS 342.185 acts "as both a statute of limitations and a statute of repose."[81] When the alleged injury is cumulative, "the running of both periods begins on the date the injured employee is advised that he has suffered a work-related cumulative trauma injury."[82] But, for single-event injuries such as Rodarte's this Court has refused to adopt a discovery rule,[83] and has consistently held

---

[80] KRS 342.185(1) (emphasis added).

[81] *Consol of Ky., Inc. v. Goodgame*, 479 S.W.3d 78, 84 (Ky. 2015).

[82] *Id.*

[83] *See Coslow v. General Elec. Co.*, 877 S.W.2d 611 (Ky. 1994).

27

that "the running of both periods begins on the date of accident,"[84] i.e., the date the work-related injury occurs. "A statute of limitations limits the time in which one may bring suit **after the cause of action accrues**[.]"[85] If the statute of limitations is triggered on the date the cause of action accrues, and the statute of limitations begins running on the date of the accident, then the date of the accident is the date the cause of action accrues. Therefore, Rodarte's claim accrued on the date he injured his shoulder: August 13, 2018.

The fact that Rodarte received TTD benefits beginning the day after his shoulder injury and ending almost a year after the settlement agreement is a red herring. If income benefits are paid, KRS 342.185 tolls the running of the statute of limitations until two years after the last voluntary payment or two years after the date of the accident, whichever is later.[86] But a tolling provision is just that, it postpones the date on which a claimant must file a claim for a cause of action that has already accrued, it does not change the date on which it accrued. It is on this point that the Board "overlooked or misconstrued controlling statutes or precedent" when it held that

> at the time the 2016 claim settled, the statute of limitations had not begun to run on Rodarte's claim as the limitation period began to run after September 14, 2020, when payment of TTD benefits ceased. Thus, his claim had not accrued at the time the settlement agreement in the 2016 claim was approved and KRS 342.270(1) is inapplicable.

---

[84] *Consol*, 479 S.W.3d at 84.

[85] *Id*. at 82 (quoting *Coslow,* 877 S.W.2d at 612) (emphasis added).

[86] KRS 342.185(1).

28

In other words, the Board held that Rodarte's claim accrued on the date that BlueLinx stopped paying TTD benefits. But, as noted, Rodarte's claim accrued on the date his shoulder injury occurred, meaning that his statute of limitations began running on August 13, 2018. BlueLinx's act of beginning TTD payments on August 14 tolled the statute of limitations, but it did not and could not cause the date of accrual to change. If the Board's logic is followed, then the act of making voluntary payments would have stopped the running of a statute of limitations that never started: it held that the claim did not accrue, and therefore the statute of limitations did not begin running, until Rodarte stopped receiving voluntary benefits.

In addition, we agree with the Court of Appeals' observation that the Board's holding that Rodarte had to reach MMI before his claim could accrue is not based on any precedent. In that vein, we would further note that 803 KAR 25:010 §7, which lists the documents that must be filed in support of a Form 101, does not require documents stating that the claimant has reached MMI. Rather, the regulation states, in relevant part:

> (1) The applicant shall file an application for resolution of an injury, occupational disease, hearing loss, or interlocutory relief claim through the LMS. At the time of, or within fifteen (15) days after the filing of the application, the following shall be filed:
>
>> (d) One (1) medical report, which may consist of legible, handwritten notes of the treating physician, and which shall include the following:
>>
>>> 1. A description of the injury that is the basis of the claim; [and]
>>>
>>> 2. A medical opinion establishing a causal relationship between the work-related

29

events or the medical condition that is
the subject of the claim[.]

Moreover, the plain language of KRS 342.270 requires joinder of all claims that have accrued and are known or reasonably should be known. Nowhere does the statute state that the joinder is only required if the claimant has reached MMI.

Based on the foregoing, we hold that Rodarte's shoulder injury claim accrued prior to the entry of the settlement agreement for the 2016 claim. KRS 342.270(1) directs that a claimant "shall join all causes of action against the named employer which have accrued and which are known, or should reasonably be known, to him[.]" And, "[f]ailure to join all accrued causes of action will result in such claims being barred under this chapter as waived by the employee." Rodarte's cause of action for his shoulder injury accrued on the date he injured his shoulder: August 13, 2018. There is no dispute as to the injury's work-relatedness or that the SLAP tear diagnosis was supported by objective medical evidence. It is also not alleged that the injury was not "known" to Rodarte. When Rodarte filed his Form 101 for his knee and ankle injury in November 2018, he had already injured his shoulder, been diagnosed with a SLAP tear, and underwent surgery to repair the SLAP tear. He was therefore obligated by KRS 342.270(1) to join his 2018 shoulder claim to his 2016 knee and ankle claim prior to the finality of the settlement agreement. His failure to do so renders his 2018 claim barred.

Although we feel constrained by KRS 342.270(1) to reach this outcome, we are further compelled to note our displeasure in doing so. It is well-

30

established that the primary purpose of the Workers' Compensation statutes "is to aid injured or deceased workers" and that they must "be interpreted in a manner that is consistent with their beneficent purpose."[87] Under these facts and circumstances we are left with no choice but to apply KRS 342.270(1), though doing so does not serve the overarching purpose of the Workers' Compensation statutes.

### III. CONCLUSION

Based on the foregoing, we affirm the Court of Appeals in full. CALJ Gott's order denying Rodarte's motion to reopen is affirmed, and ALJ Weatherby's order dismissing Rodarte's 2018 shoulder claim is hereby reinstated.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Michael Louis Weber
Weber, Dickey & Bellman

COUNSEL FOR APPELLEE, BLUELINX CORP.:

Douglas P. Dawson
Sewell & Neal, PLLC

---

[87] *See, e.g.*, *Kindred Healthcare v. Harper*, 642 S.W.3d 672, 679 (Ky. 2022) (quoting *Ky. Unisured Emp.'s Fund v. Hoskins*, 449 S.W.3d 753, 762 (Ky. 2014)).

APPELLEE, WORKERS' COMPENSATION
BOARD:

Michael Wayne Alvey, Chair
Department of Workers' Claims


APPELLEE, ADMINISTRATIVE LAW JUDGE:

Hon. Johnathan R. Weatherby


APPELLEE, ADMINISTRATIVE LAW JUDGE:

Hon. Douglas Wayne Gott